UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO: 4:17-CV-00150-JHM

WARREN KING                                                                              PLAINTIFF

V.

CUSTOM RESINS, INC.                                                   DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. [DN 19]. Fully briefed, this matter is ripe for decision. For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

### I. BACKGROUND

According to the Complaint, Mr. Warren King was employed by Custom Resins, Inc. as an Industrial Electrician for just over seven years. [DN 1 ¶¶ 9–10]. Custom Resins employed Mr. King at its Henderson location, a facility that produces nylon polymers in an industrial setting. [DN 19-1 at 1]. Mr. King was tasked with fixing various technical problems that occurred in the plant. [*Id.*].

In August 2013, Mr. King was involved in a motor vehicle accident which resulted in a disability in his back. [DN 1 ¶ 11]. Mr. King asserts that this accident affects his ability to stand, walk, twist, and carry objects, among other mobility complications. [*Id.*]. Later, in 2015, Mr. King's other disability—Carpal Tunnel syndrome—became aggravated and required surgery. [*Id.* ¶¶ 12, 14]. Mr. King's Carpal Tunnel syndrome affects his ability to use his hands and wrists to grip or carry objects. [*Id.* ¶ 12].

Following Mr. King's Carpal Tunnel surgery, he was provided work restrictions by his physician. [*Id.* ¶ 15]. Mr. King claims that he requested a disability accommodation from Custom

Resins and that this request was honored until November of 2015 when Mr. King's direct supervisor requested that he perform work outside of his provided restrictions and accommodation. [*Id.* ¶ 16]. In response, Mr. King says he engaged in protected activity and complained to this supervisor that the request was outside of his restriction. Mr. King asserts that in response to his complaint, his supervisor, Mr. Homer Watson, verbally attacked him—cussing in his face, slamming cabinet doors, and angrily breaking pieces of work equipment. [*Id.* ¶¶ 17–18]. After this incident, Mr. King alleges that Mr. Watson "bullied and harassed him and provided him with disparate treatment when compared to similarly-situated employees of [Custom Resins] who did not suffer from a recognized disability[.]" [*Id.* ¶ 19]. Specifically, Mr. King alleges that he was not paid for required lunch breaks when other employees who did not suffer from a disability or who had not requested a disability accommodation were paid for those times. [*Id.* ¶ 20]. Mr. King explains that the abuse continued until his employment with Custom Resins was terminated in May of 2016 for absenteeism. [*Id.* ¶ 21].

Mr. King alleges that Custom Resins did not terminate him for absenteeism but rather because he engaged in a protected activity and because of his age and disabilities. [*Id.* ¶ 22]. Mr. King substantiates this assertion by claiming he was replaced by an employee substantially younger and able-bodied. [*Id.* ¶ 23].

On November 13, 2017, Mr. King filed a Complaint asserting three causes of action: (1) age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA") and the Kentucky Civil Rights Act ("KCRA"); (2) disability discrimination pursuant to the Americans with Disabilities Act ("ADA") and the KCRA; and (3) retaliation pursuant to the ADA and the KCRA. [*Id.*]. After discovery, Custom Resins moved for summary judgment on each of Mr. King's three claims arguing he failed to establish a prima facie case of each. [DN 19-1]. Mr. King

responded and did not oppose the motion as to his age discrimination claim. However, Mr. King argued that the submitted evidence established prima facie cases for both disability discrimination and retaliation. [DN 22]. Custom Resins replied that Mr. King simply reasserted the allegations from his Complaint, allegations which fail to correspond with the submitted evidence. [DN 24].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

Custom Resins moves for summary judgment on each of Mr. King's three claims. The Court will address each of Mr. King's causes of action in turn.

### A. Age Discrimination

As his first cause of action, Mr. King claims Custom Resins violated his rights pursuant to the ADEA and the KCRA. [DN 1 ¶¶ 25–28]. Custom Resins moves for summary judgment arguing King cannot establish a prima facie case of age discrimination because he cannot prove he was replaced by someone outside of the protected class—Mr. King was replaced by a man three years older than him, a member of the protected class. [DN 19-1 at 8]. Mr. King acknowledges in his Response that he has insufficient evidence to sustain this claim, and, as such, he does not oppose summary judgment as to this claim. [DN 22 at 1]. Accordingly, the Court grants Custom Resins' Motion for Summary Judgment as to Mr. King's age discrimination claim.

### B. Disability Discrimination

As his second cause of action, Mr. King asserts that Custom Resins violated his rights protected by the ADA and the KCRA "by failing to engage in the interactive process, failing to provide a reasonable disability accommodation upon request and then by discriminating against and ultimately terminating his employment based upon his disability." [DN 1 ¶¶ 29–32]. Mr. King claims two disabilities subjected him to workplace discrimination and his eventual termination—a back injury affecting his ability to stand, walk, twist, and carry items and Carpal Tunnel syndrome affecting the use of his hands and wrists. [DN 1 ¶¶ 11–14]. Custom Resins moves for summary judgment, arguing Mr. King is unable to establish a prima facie case for disability discrimination because he cannot prove he was replaced by an able-bodied individual.

Under federal law, to establish a prima facie case for disability discrimination where there is no direct evidence of discrimination, as here, a plaintiff must show: (1) he is disabled; (2) he is

otherwise qualified for the position; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of his disability; and (5) after rejection or termination, the position remained open, or the disabled individual was replaced by a member outside the protected class. *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1996). The same standard is used for claims of disability discrimination pursuant to the KCRA, so the claims will be analyzed together. *Stearman v. Ferro Coals, Inc.*, 751 Fed. App'x 827, 831 (6th Cir. 2018).

Mr. King contests Custom Resins' argument that he cannot establish the last element of the prima facie case. He relies on *O'Connor v. Consol. Coin Caterers Corp.* for the proposition that it does not matter if he was replaced by someone else with a disability so long as he lost his position because of his disability. 517 U.S. 308, 312 (1996). Custom Resins argues that Mr. King's reliance is misplaced because *O'Connor* concerned a claim of age discrimination under the ADEA and that holding has not been extended to the disability discrimination context. *Id.* at 311. However, the Sixth Circuit addressed this point in *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012). The court stated that in the disability discrimination context a plaintiff does not necessarily need to establish that he was replaced by a person outside the protected class as an element of his prima facie case. *Id.* at n.11. Considering "the somewhat unique characteristics of various disabilities, and the differences between individuals afflicted with a particular disability, replacement of one disabled individual with another disabled individual does not necessarily weaken the inference of discrimination . . . ." *Id.* Instead, "the precise characterization of the fifth prong of the test will sometimes vary depending upon the factual scenario confronting the court." *Id.*

"The key question [of the fifth prong] is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007*), abrogated on other grounds by Lewis*, 681 F.3d 312. Here, the Court is not convinced Mr. King presented sufficient evidence to satisfy the last prong. The evidence submitted to the Court shows that Mr. King was terminated for absenteeism far exceeding the percentage of time prescribed by the company's handbook as "unacceptable". [DN 19-3 at 32–34; DN 19-9]. Mr. King's absences began, and Custom Resins' management warned Mr. King about this behavior being unacceptable, beginning in July 2013, predating both of his disabilities. [DN 19-4]. Mr. King continued to miss work and received additional warnings that further absences from work would not be tolerated. [DN 19-7; DN 19-8]. Further, although not dispositive as Custom Resins argues, Mr. King's replacement suffers from a congenital abnormality in his foot, causing him to limp. [DN 19-10 ¶ 2]. This evidence is insufficient to establish an inference of unlawful discrimination—the final element of the disability discrimination claim.

To the extent that Mr. King's discrimination claim is based on the alleged disparate treatment from other similarly-situated employees, the result is the same. Mr. King claims he was not paid for lunch breaks while other similarly-situated employees—Johnny Lee and Michael Harvey—were compensated for those same break times. [DN 1 ¶ 20]. Mr. King argues the reason for the disparate treatment was because they did not have a recognized disability. [*Id.*]. Custom Resins explains that the difference in treatment was not due to Mr. King's disability but rather to the different shifts being worked by the named employees. [DN 19-1 at 13]. Custom Resins submitted its employee handbook as evidence of this contention. The handbook explicitly states

that employees working eight-hour shifts receive a half-hour unpaid lunch while employees working twelve-hour rotating shifts receive a paid lunch on-site. [DN 19-3 at 11]. Mr. King worked eight-hour shifts and Mr. Lee and Mr. Harvey were only paid for lunch breaks if they worked a twelve-hour shift. [DN 19-11 ¶¶ 7–10]. No reasonable jury could find this different treatment to be the result of discrimination based on Mr. King's disability by Custom Resins.

The Court does not believe the evidence submitted establishes that Mr. King "suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007). Accordingly, the Court grants Custom Resins' Motion for Summary Judgment as to Mr. King's disability discrimination claim.

**C. Retaliation**

Finally, Custom Resins moves for summary judgment as to Mr. King's final cause of action—retaliation. Mr. King asserts that he requested a reasonable accommodation of his disability upon his return to work from a surgery concerning his disability and he was met with bullying, disparate treatment, and, eventually, termination of his employment. [DN 1 ¶¶ 33–38]. Custom Resins moves for summary judgment on two bases—Mr. King's failure to engage in a protected activity and his failure to establish a causal link between any asserted protected activity and his eventual termination. [DN 19-1 at 8].

To establish a prima facie case of retaliation, a plaintiff must show: (1) he engaged in activity protected under Title VII; (2) his employer knew he engaged in the protected activity; (3) his employer subsequently took an adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674 (6th Cir. 2013) (citation omitted), *abrogated on other*

*grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013). If the plaintiff establishes this prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the employer carries that burden, "the burden of production returns to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination." *Fuhr*, 710 F.3d at 675 (citing *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003)). Like disability discrimination, claims for retaliation under the KCRA are analyzed in the same manner as claims under Title VII. Thus, these claims are evaluated together. *Allen v. Ingersoll-Rand Co.*, 1997 WL 579140, at *11 (W.D. Ky. June 17, 1997) (citing *Mountain Clay, Inc. v. Comm'n on Human Rights*, 830 S.W.2d 395, 396 (Ky. Ct. App. 1992)).

Custom Resins first contends that Mr. King fails to establish a prima facie case of discrimination because he did not engage in a protected activity. [DN 19-1 at 8]. Mr. King, in his Response, argues that he engaged in protected activity by complaining to his supervisor, Mr. Watson, about being forced to work outside of his previously agreed upon accommodations. [DN 22 at 7]. An individual engages in a "protected activity" under the ADA when "such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). It is undisputed that Mr. King, following his return from Carpal Tunnel surgery in the fall of 2015, asked for and was provided accommodations in accordance with the work restrictions from his physician. A request for an accommodation of a disability qualifies as protected activity under Title VII. *Baker v. Windsor Republic Doors*, 414 Fed. Appx. 764, 777 n.8 (6th Cir. 2011). As such, Mr. King satisfied the first element of the prima facie case for retaliation.

Custom Resins does not dispute that it was aware that Mr. King engaged in the protected activity of requesting an accommodation. Next, it is necessary to determine whether Mr. King satisfies the third prong of his retaliation claim—adverse employment action.

Custom Resins does not contest one of the bases of adverse employment action, Mr. King's termination in May 2016. But this is not the only instance which may satisfy the third prong. The third prong may also be satisfied by showing that the "plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor[.]" *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009) (quoting *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000)). Mr. King claims he was subjected to verbal abuse by his direct supervisor, Mr. Watson, following a conversation with Mr. King during which he said he was not to perform work outside of his accommodations.

To the extent that Mr. King's retaliation claim is based on retaliatory harassment, it must fail because of the lack of a causal connection between any verbal harassment and his request for an accommodation. In his Complaint, Mr. King alleges that he complained to Mr. Watson about his disability and in return he was verbally attacked by Mr. Watson—cussing in his face, slamming cabinet doors, and breaking work equipment. [DN 1 ¶¶ 17–18]. However, Mr. King submitted no evidence beyond his own Complaint that the conversation with Mr. Watson concerned his accommodation or disability, and his deposition testimony directly contradicts that allegation.

Mr. King testified at his deposition that the incident where Mr. Watson cussed at him, slammed cabinet doors, and broke equipment occurred because, as Mr. King explains, Mr. Watson did not want him cleaning his tools from the day. [DN 19-2 at 48:1–21]. When asked to clarify, Mr. King stated that the incident he described as being in response to him cleaning his tools was the incident to which paragraph 18 of the Complaint referred. [*Id.* 54:52–55:9]. Paragraph 18 of

9

the Complaint alleges that Mr. Watson responded to Mr. King's complaint that he was being forced to work outside of his accommodations by verbally attacking him, slamming cabinets, and breaking equipment. [DN 1 ¶ 18]. That being the case, Mr. King's abovementioned deposition testimony, the only evidence submitted to the Court on this point, directly contradicts the allegations made in the Complaint.

Also in his deposition testimony, Mr. King claims Mr. Watson was frequently angry or hostile at work. [19-2 at 49:9–24]. However, Mr. King submits no evidence that any of this hostility or anger directed at him was ever the result of, or related to, his accommodation request specifically, or his disability more generally. In fact, when asked whether he was ever subjected to negative comments about his disability, Mr. King stated, "Not that I can remember at this time." [*Id.* at 156:18–18]. Mr. King himself affirmatively refutes any potential connection between Mr. Homer's angry behavior at work and his disability. Consequently, the Court finds that Mr. King failed to establish a causal connection between his request for an accommodation and any hostility by his supervisor.

To the extent that Mr. King bases his claim for retaliation on his termination of employment, Custom Resins challenges his ability to establish a causal connection between the request for an accommodation and his termination six months later. [DN 19 at 8–9]. Mr. King, in response, argues the causal connection between these two activities can be established based on the close temporal proximity. [DN 22 at 7]

Mr. King argues that the temporal proximity between his request for accommodation in November 2015 and his subsequent harassment and ultimate termination in May 2016, permit the inference that the adverse action would not have been taken had Mr. King not requested an accommodation. The Sixth Circuit has accepted temporal proximity as a valid basis from which

to draw an inference of retaliatory motivation under limited circumstances. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 524–25 (6th Cir. 2008). Specifically, the more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement his claim with "other evidence of retaliatory conduct to establish causality." *Id.*

Here, Mr. King argues that given his seven-year employment with Custom Resins, the six month time frame between his request for an accommodation and his termination is sufficient to establish the requisite causal connection. [DN 22 at 7–8]. However, this timing, without more, does not raise the inference that the adverse action would not have been taken had King not engaged in the protected activity. *See Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that [plaintiff] was discharged four months after filing a discrimination claim is insufficient to support an [inference] of retaliation."). Mr. King offers additional evidence—harassment and bullying by his supervisor, Mr. Watson, and disparate treatment as compared to similarly-situated coworkers—to establish causality.

For the reasons articulated above, there is no evidence of Mr. King's contention that he was bullied or harassed by Mr. Watson was based on his disability. Accordingly, the Court turns its focus to the allegation of disparate treatment. Mr. King argues that he was treated differently than other employees, specifically regarding paid lunch breaks, thereby establishing the causal connection requirement of the prima facie case. The Sixth Circuit has explained that, "[i]n determining whether there is a causal relationship between a plaintiff's protected activity and an allegedly retaliatory act, courts may consider whether the employer treated the plaintiff differently from similarly situated individuals . . . ." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516–17 (6th Cir. 2009). "In order for . . . employees to be considered similarly-situated . . . the plaintiff must prove that all of the relevant aspects of his employment situation are 'nearly identical' to those of

11

the [non-protected] employees who he alleges were treated more favorably." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). For the reasons discussed above—specifically, the difference in shifts the named employees were working when they were paid for their lunch break—Mr. King cannot establish that these workers' employment was "nearly identical" to his. Accordingly, Mr. King cannot rely on the difference in treatment to establish a causal connection. The Court is not persuaded that a causal connection exists between Mr. King's protected activity—requesting that Custom Resins accommodate his disability—and his eventual termination.

Because Mr. King failed to establish a causal connection between his protected activity and adverse employment action, summary judgment is appropriate. Accordingly, the Court grants Custom Resins' Motion for Summary Judgment as to Mr. King's retaliation claim.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [DN 19] is **GRANTED**.

Joseph H. McKinley Jr., District Judge
United States District Court

May 20, 2019

cc: counsel of record